IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
**Richmond Division**

SHANIQUA J.,[1]          )
                        )
   *Plaintiff*,          )
                        )
      v.          )     Civil No. 3:25-cv-231-SLS
                        )
FRANK BISIGNANO,          )
Commissioner of Social Security,          )
                        )
   *Defendant*.          )
_____)

**MEMORANDUM OPINION**

In this action, Plaintiff Shaniqua J. seeks review of the Commissioner of the Social Security Administration's ("SSA's") decision to deny her Title II application for disability insurance benefits and Title XVI application for Supplemental Security Income ("SSI"). This matter comes before the Court on cross-motions for summary judgment, which have been fully briefed, making this matter ripe for review. (ECF Nos. 13, 14, 19.) The Court exercises jurisdiction with the consent of the parties pursuant to 28 U.S.C. § 636(c)(1) (ECF Nos. 3, 20, 21) and pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

Plaintiff moves the Court to reverse the Commissioner's decision denying her social security benefits and to award her benefits for a closed period from July 31, 2021 through June 14, 2023, or in the alternative, remand for further administrative proceedings. (ECF No. 13, at 1; ECF No. 14, at 1-2, 22.) As the basis for such relief, Plaintiff argues that the Administrative Law Judge's ("ALJ's") residual functional capacity ("RFC") determination constitutes error because

---

[1] The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that federal courts refer to claimants by their first names and last initials in social security cases.

1

the ALJ improperly (1) omitted sufficient off-task and absenteeism limitations; and (2) evaluated medical opinion evidence from Randall Scott, M.D. (ECF No. 14, at 1, 17-22.)

In response, the Commissioner contends that "[t]he ALJ conducted a thorough review of the record before making the [RFC] finding" and explained the limitations she included in the RFC determination. (ECF No. 19, at 2.) The Commissioner further asserts that the ALJ adequately evaluated the medical opinion evidence and accounted for Plaintiff's time off-task and absenteeism in the RFC finding. (ECF No. 19, at 14.) Therefore, the Commissioner asks the Court to affirm the denial decision. (ECF No. 19, at 2, 25.)

For the reasons set forth below, the Court finds that the ALJ's consideration of Plaintiff's subjective complaints, physical and mental impairments, and the medical opinion evidence comports with applicable legal standards and that substantial evidence supports the ALJ's RFC determination. Therefore, the Court will DENY Plaintiff's Motion for Summary Judgment or, in the Alternative, Motion for Remand (ECF No. 13), GRANT the Commissioner's Motion for Summary Judgment and Brief in Support Thereof (ECF No. 19), and AFFIRM the final decision of the Commissioner.

## I.    PROCEDURAL HISTORY

On August 12, 2021, Plaintiff filed an application for disability insurance benefits, and on September 7, 2021, she filed an application seeking SSI, with both applications alleging disability beginning on July 31, 2021. (Administrative Record ("R.") at 80-81, 262-72, 273-76.)[2] Plaintiff's applications were denied initially and on reconsideration. (R. at 127-30, 132-35, 145-46, 148-51.)

---

[2] The administrative record in this case remains filed under seal, pursuant to E.D. Va. Loc. Civ. R. 5 and 7(C). In accordance with these rules, the Court will exclude personal identifiers from this Memorandum Opinion. The Court will further restrict its discussion of Plaintiff's information to the extent necessary to result in a proper analysis of the case.

Plaintiff requested a hearing before an ALJ, and one was held on February 7, 2024. (R. at 47-79, 152-53.) On March 26, 2024, the ALJ issued a written decision, finding Plaintiff not disabled from July 31, 2021 (the alleged onset date) through the date of the decision. (R. at 16-41.)

Following the ALJ decision, the SSA Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (R. at 1-3.) Plaintiff now seeks judicial review pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

## II.    STANDARD OF REVIEW

The Act defines a disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). An individual has a disability "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ." *Id.* § 423(d)(2)(A).

SSA regulations set forth a five-step process to determine whether an individual is disabled. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *see Mascio v. Colvin*, 780 F.3d 632, 634-35 (4th Cir. 2015) (describing the ALJ's five-step sequential evaluation). At step one, the ALJ reviews the claimant's current work activity to determine if he or she has been participating in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). At step two, the ALJ asks whether the claimant's medical impairments meet the regulations' severity and duration requirements. *Id.* §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). At step three, the ALJ determines

whether the medical impairments meet or equal an impairment listed in the regulations.  *Id.* §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii).  Between steps three and four, the ALJ determines the claimant's RFC, which accounts for the most that the claimant can do despite his or her impairments.  *Id.* §§ 404.1545(a)(1), 416.945(a)(1).

At step four, the ALJ assesses whether the claimant can perform his or her past employment given his or her RFC.  *Id.* §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv).  The burden of proof remains with the claimant through step four of the analysis, and the claimant must prove that his or her limitations preclude the claimant from performing his or her past relevant work.  *See Bowen v. Yuckert,* 482 U.S. 137, 146 n.5 (1987); *Hancock v. Astrue*, 667 F.3d 470, 472 (4th Cir. 2012).  If such past work can be performed, then benefits will not be awarded, and the analysis ends.  *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).  However, if the claimant cannot perform his or her past work, the analysis proceeds to step five, and the burden then shifts to the Commissioner to show that the claimant can perform other work that is available in the national economy.  *See id.* §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).  The Commissioner usually offers this evidence through the testimony of a vocational expert.  *See Mascio*, 780 F.3d at 635.

In reviewing a decision to deny benefits, the Court will affirm the SSA's "disability determination 'when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence.'"  *Id.* at 634 (quoting *Bird v. Comm'r of Soc. Sec. Admin.*, 699 F.3d 337, 340 (4th Cir. 2012)).  Substantial evidence requires more than a scintilla but less than a preponderance of evidence and includes the kind of relevant evidence that a reasonable mind could accept as adequate to support a conclusion.  *See Hancock*, 667 F.3d at 472; *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996).  The substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts."  *Dunn v.*

*Colvin*, 607 F. App'x 264, 274 (4th Cir. 2015) (quoting *Clarke v. Bowen*, 843 F.2d 271, 272-73 (8th Cir. 1988)).  Thus, a decision by the Commissioner is not subject to reversal merely because substantial evidence would have supported a different conclusion.  *Id.*

To determine whether substantial evidence exists, the Court must examine the record as a whole, but may not "reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [ALJ]." *Hancock*, 667 F.3d at 472 (quoting *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005) (second alteration in original)); *see Craig*, 76 F.3d. at 589.  The Court must consider the support for the Commissioner's decision and "whatever in the record fairly detracts from its weight." *Breeden v. Weinberger*, 493 F.2d 1002, 1007 (4th Cir. 1974) (quoting *Universal Camera Corp. v. N.L.R.B.*, 340 U.S. 474, 488 (1951)).  If a fact is supported by substantial evidence, the Court must affirm, regardless of whether the Court agrees with such findings. *Hancock*, 667 F.3d at 476 (citing *Smith v. Chater*, 99 F.3d 635, 638 (4th Cir. 1996)).  If the Commissioner's findings are arbitrary or unjustified, then they are not supported by substantial evidence, and the Court must reverse the decision. *See Breeden*, 493 F.2d at 1007.

### III.   THE ALJ'S DECISION

The ALJ analyzed Plaintiff's disability claim under the five-step evaluation process.  (R. at 17-40); *see* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Mascio*, 780 F.3d at 634-35.  At step one, the ALJ determined that Plaintiff had engaged in substantial gainful activity from June 15, 2023, through the date of the decision (March 26, 2024).  (R. at 18.)[3]  At step two, the ALJ found Plaintiff suffered from the following severe impairments: disorders of the spine, cardiac dysrhythmias, diabetes mellitus, multiple sclerosis (MS), migraines with trigeminal neuralgia,

---

[3] Plaintiff does not challenge this step one finding and instead only seeks to recover benefits for the closed period from July 31, 2021 through June 14, 2023.  (ECF No. 14, at 1-2 & n.1.)

urinary disorders, depressive disorder, anxiety disorder, somatic/conversion disorder, attention deficit hyperactivity disorder (ADHD), and trauma and stressor related disorder.  (R. at 19.)

At step three, the ALJ concluded that Plaintiff did not have an impairment, individually or in combination, which met or equaled a disability listing in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (R. at 21-25.)  In so concluding, the ALJ began by analyzing Plaintiff's physical disorders. The ALJ found that none met the criteria of a listing and supported her findings as follows:

- Plaintiff's spine disorder did not meet listings 1.15 and 1.16.  (R. at 21-22.)  The record showed no active treatment for spine disorder aside from taking pain medications, and imaging reflected "signal abnormalities associated with multiple sclerosis but no significant degenerative disc disease." (R. at 22.)  On examination, Plaintiff exhibited left-side weakness and decreased sensation with gait instability during MS flare-ups.  However, neurology clinical findings remained unremarkable and reflected no use of an assistive device for ambulation.  (R. at 22.)

- Plaintiff's cardiac dysrhythmias did not meet listing 4.05.  (R. at 22.)  Plaintiff treated her cardiac dysrhythmias or tachycardia with medication, and Holter monitor studies were "generally unremarkable." (R. at 22.)  Additionally, treatment records did not show recurrent episodes of cardiac syncope or near syncope.  (R. at 22.)

- Plaintiff's urinary disorders did not meet listing 6.00.  (R. at 22.)  Plaintiff treated this impairment with medication and self-catheterization and had a successful bladder implant in 2022 that eliminated the need for a catheter.  (R at 22.)

- Plaintiff's diabetes did not meet listing 9.00.  (R. at 22.)  Plaintiff experienced elevated blood glucose levels due to her steroid use for her MS and treated her diabetes with medication.  (R. at 22.)

- Plaintiff's MS did not meet listing 11.09.  (R. at 23.)  Plaintiff's MS "responded well to treatment during the relevant period" with only one severe flare-up in April 2022.  (R. at 23.)  During this flare-up, Plaintiff exhibited "left-sided weakness, decreased sensation of the face, and gait instability, which improved with treatment." (R. at 23.)

- Plaintiff's migraines did not satisfy listing 11.01.  (R. at 23.)  With medication and treatment, Plaintiff had "few emergency room visits for acute headaches." (R. at 23.)

The ALJ next turned to Plaintiff's mental impairments, considering the four broad areas of mental functioning (commonly called "paragraph B" criteria) and concluding that Plaintiff's mental impairments did not meet or equal the criteria for depressive/bipolar disorders, anxiety and obsessive compulsive disorders, somatic symptom disorders, neurodevelopmental disorders, or trauma- and stressor-related disorders.[4]  (*See* R. at 23-25); *see also* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(B)(3), (5), (6), (9), (11).

The ALJ found Plaintiff moderately limited in understanding, remembering, or applying information, concentrating, persisting, or maintaining pace, and adapting or managing oneself, and mildly limited in interacting with others. (R. at 23-25.)  In making this finding, the ALJ considered Plaintiff's hearing testimony, reported activities, and the medical records.  (*See* R. at 23-25.)  Plaintiff testified that she struggled with her short-term memory, concentrating, focusing, processing, and retaining information and felt like she could not go out alone or handle stress or changes in routine. (R. at 23-24.)  Plaintiff reported being able to prepare meals, care for and play with her young daughter, go out daily, shop by phone, mail, and computer, pay bills, count change, manage a bank account, watch movies, and follow written instructions.  (R. at 23.)  She stated that reading was somewhat difficult, she needed spoken instructions repeated, and she needed reminders to perform personal care and take medication.  (R. at 23.)  She also stated that she got along with everyone. (R. at 24.)  The record showed regular psychiatric treatment with medication

---

[4]    The SSA evaluates the effects of a mental disorder on four areas of mental functioning based on a five-point rating scale.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(F)(2).  An extreme limitation is the inability to function independently, appropriately, or effectively, and on a sustained basis in an area.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(F)(2)(e).  A marked limitation exists when an impairment seriously limits the ability to do the same.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(F)(2)(d).  Moderate indicates a fair limitation, mild includes a slight limitation, and "no" or "none" means the claimant can function in the area independently, appropriately, effectively, and on a sustained basis.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(F)(2)(a)-(c).

7

regimen, and Plaintiff generally reported "doing well" with treatment and that she did not have "panic attacks like she used to" experience. (R.at 24-25.) The treatment records generally included normal mental status findings, including normal thought process, thought content, judgment, insight, and "fully intact" cognitive functioning, as well as improvement of depression and anxiety symptoms. (R. at 24.)

The ALJ then determined Plaintiff's RFC. (R. at 25-39.) Based on the record, the ALJ found that Plaintiff could perform light work as defined in 20 C.F.R. §§ 404.1567(b), 416.967(b), except she could:

> occasionally balance, stoop, kneel, crouch, crawl, and climb ramps and stairs; can never climb ladders, ropes, or scaffolds; can frequently handle, finger, and feel bilaterally; requires a sit/stand option every 60 minutes such that the work could be performed sitting or standing; must avoid concentrated exposure to extreme heat, fumes, odors, dust, gases, and poor ventilation; must avoid all exposure to hazards including moving machinery and unprotected heights; can perform work in a moderate or quieter environment; can understand, remember, and carry out simple tasks requiring no more than scheduled breaks; and can tolerate occasional changes in the work setting.

(R. at 25.)

In arriving at the RFC, the ALJ first summarized Plaintiff's subjective complaints. (R. at 26-27.) Regarding her physical impairments, Plaintiff testified that she could not work because of "constant pain from her knees to her toes due to neuropathy." (R. at 26.) She also reported "extreme," daily pain due to her MS, along with issues focusing, tongue numbness, and bladder control issues, ultimately leading to a December 2022 bladder surgery which helped control some symptoms. (R. at 26.) She also testified to having monthly headaches. (R. at 26.) She contends that her symptoms made it difficult to stand and sit and required her to change positions. (R. at 26.) Regarding her mental impairments, Plaintiff testified to experiencing depression symptoms

on a weekly basis, panic attacks that have improved with treatment, and difficulties with her short-term memory, fatigue, focusing, processing, and retaining information.  (R. at 27.)

The ALJ then detailed Plaintiff's medical records pertaining to her impairments.  (R. at 28-36.)  Beginning with Plaintiff's spine disorder, MS, migraine headaches and trigeminal neuralgia, the ALJ noted that Plaintiff had only one hospitalization for an MS exacerbation during the relevant disability period.  (R. at 30.)  The record described Plaintiff's MS condition as "stable with treatment" and contained "unremarkable clinical exam findings."  (R. at 30.)  Plaintiff treated her other conditions with medication and reported no symptoms from her medication or MS treatment.  (R. at 30.)  The ALJ concluded that these impairments limited Plaintiff to light work with postural and environmental limitations, "the need for a sit/stand option, no exposure to hazards, and work in a moderate or quieter work environment."  (R. at 30.)

The ALJ found that the record reflected "minimal treatment" for Plaintiff's cardiac dysrhythmias since the alleged onset date.  (R. at 31.)  Plaintiff "conservatively managed" this impairment with medication and exhibited "generally normal" heart sounds.  (R. at 31.)  The ALJ found that this condition limited Plaintiff to light work along with postural and environmental restrictions.  (R. at 31.)

Plaintiff's diabetes likewise improved with "minimal and conservative treatment."  (R. at 31-32.)  Despite "elevated blood glucose levels at times during the relevant period," the record showed "no significant complications or symptoms" from Plaintiff's diabetes.  (R. at 32.)  Therefore, the ALJ found limiting Plaintiff to light work with postural and environmental limitations accounted for symptoms relating to this impairment.  (R. at 32.)

Regarding Plaintiff's urinary disorders, the ALJ considered emergency room visits for sepsis, dysuria, cystitis, urinary tract infections and pain in May 2022, resulting in Plaintiff

9

learning clean intermittent catheterization.  (R. at 32.)  In December 2022 Plaintiff received a bladder implant due to MS-related problems.  (R. at 32.)  In January 2023, Plaintiff reported doing "very well" and no longer using a catheter.  (R. at 32.)  The ALJ found a reduced range of light work with postural limitations appropriate to account for her urinary disorders.  (R. at 32.)

As for Plaintiff's mental impairments, the ALJ acknowledged two hospitalizations and several instances of emergency room visits which predated the alleged onset date.  (R. at 32-33, 35.)  However, during the alleged disability period, Plaintiff received "minimal and conservative treatment with medication prescribed by her psychiatrist and a brief [period] of therapy."  (R. at 35.)  Plaintiff's psychiatrist noted improvement of symptoms with treatment and generally "unremarkable mental status exam findings with some anxiety and depression, but adequate insight and judgment and fully intact cognitive functioning."  (R. at 35.)  After brief therapy, Plaintiff's therapist reported normal mental status examination findings except for Plaintiff "appearing moderately anxious."  (R. at 35.)  Plaintiff performed in the "predominantly normal range" in a neuropsychological examination, with only a "mild impairment of attention, somewhat worse non-dominant hand motor skills," "markedly impaired" visual free recall, but otherwise normal or above normal in all other neurocognitive domains.  (R. at 35.)  Based on Plaintiff's mental impairments, the ALJ limited Plaintiff to "understanding, remembering, and carrying out simple tasks requiring no more than scheduled breaks and occasional changes in the work setting."  (R. at 35.)

The ALJ found the medical record detailed above inconsistent with Plaintiff's statements about the intensity, persistence, and limiting effects of her symptoms.  (R. at 28.)  The ALJ also noted that her reported activities of daily living did not support the severity of Plaintiff's alleged symptoms.  (R. at 35.)  Plaintiff could complete household chores, prepare meals, watch movies,

read, count change, pay bills, manage a bank account, shop, and complete personal care tasks with some assistance from family.  (R. at 35.)  Plaintiff also drove multiple days per week, served as the primary caregiver for her young daughter, and at the time of the hearing worked full-time in patient-care assistance for home health, which required her to drive from home to home to care for patients and assist with meals, dressing, cleaning and showering.  (R. at 26, 35.)  Treatment records stated that Plaintiff took college classes in May 2022 for billing and coding (R. at 35), and Plaintiff reported working recently as many as sixty hours per week.  (R. at 35.)

The ALJ also considered the medical opinions and prior administrative medical findings. (R. at 36-38.)  State reviewing psychologist, Joseph Leizer, Ph.D., found that Plaintiff suffered from no severe mental impairments.  (R. at 36.)  The ALJ found this inconsistent with the medical record, which shows some "active mental health treatment," "some mental status examination abnormalities, but overall stability with treatment."  (R. at 36.)  The ALJ therefore found this opinion unpersuasive.  (R. at 36.)

On reconsideration, William Carne, Ph.D., found Plaintiff moderately limited in her ability to understand, remember, or apply information, concentrate, persist, or maintain pace, adapt or manage oneself, and mildly limited in her ability to interact with others.  (R. at 36.)  The ALJ found this opinion persuasive because it was supported with an "adequate explanation" and consistent with the psychological treatment record during the relevant period.  (R. at 36.)

Jack Hutcheson, M.D., and Michael Koch, M.D., also reviewed the record and found Plaintiff capable of light work with postural and environmental limitations.  (*See* R. at 36, 37.) The ALJ deemed these opinions "partially persuasive," explaining that she found Plaintiff's "significant treatment history for her physical impairments including multiple emergency room visits, some hospitalizations, bladder implant, infusion therapy for multiple sclerosis, medication

for neuropathic pain, diabetes, headaches, and cardiac dysrhythmia is consistent with greater limitations as found" in the RFC.  (R. at 36, 37.)  The ALJ imposed greater postural and environmental limitations and the need for a sit/stand option based on Plaintiff's testimony.  (R. at 36, 37.)

The ALJ considered an opinion from Randall Scott, M.D., Plaintiff's psychiatrist since December 2019.  (R. at 37.)  Dr. Scott opined that Plaintiff had "extreme limitations with completing a normal workday and workweek" and marked limitations with:

> maintaining attention and concentration for extended periods; performing activities within a schedule and maintaining regular attendance; working in coordination with or in proximity to others; performing at a consistent pace with regular breaks; and moderate limitations with carrying out detailed instructions; sustaining an[] ordinary routine; interacting appropriately with the general public; getting along with coworkers or peers; responding appropriately to changes in the work setting; traveling in unfamiliar places.

(R. at 37.)  Additionally, Dr. Scott opined that Plaintiff would likely be absent from any workplace at least four days a month.  (R. at 37.)  The ALJ found this opinion not supported by an explanation from Dr. Jones or treatment records and inconsistent with the record showing Plaintiff experienced stability and improvement with symptoms due to medication adjustments, along with no hospitalization or emergency treatment since the alleged onset date.  (R. at 37.)  Dr. Scott also noted generally "unremarkable mental status exam findings with some anxiety and depression, but adequate insight and judgment and fully intact cognitive functioning."  (R. at 37-38.)  The ALJ therefore found Dr. Scott's opinion unpersuasive.  (R. at 37.)

The ALJ examined an opinion letter from Barbara Bishop, N.P.  (R. at 38.)  N.P. Bishop's letter indicated that Plaintiff's MS had been extremely difficult to manage, required multiple hospital visits to address symptoms, and caused "baseline neuropathic pain, fatigue, immune dysfunction, frequent falls, balance issues, insomnia, anxiety, and depression."  (R. at 38.)

12

However, the ALJ noted that the record showed only one MS-related hospitalization in April 2022, with symptoms noted as "left-sided weakness, left-sided sensation abnormalities, and gait instability." (R. at 38.) The record otherwise showed that Plaintiff generally responded well to treatment through medication and physical and occupational therapy. (R. at 38.) Clinical findings and imaging studies of the brain all also found unremarkable symptoms and stabilization of MS. (R. at 38.)

Kathryn Armstrong, N.P., Plaintiff's primary care provider, opined that Plaintiff could "lift and carry 10 pounds occasionally and frequently; that her ability to stand, walk, and sit was affected but did not quantify her ability to do these activities; could never climb, balance, stoop, crouch, kneel and crawl; that the ability to pull was affected; and she had environmental restrictions." (R. at 38.) The ALJ found that this opinion was neither supported by N.P. Armstrong's treatment records nor consistent with the record as a whole. (R. at 38.) Plaintiff's conditions were managed by medication, infusions, physical and occupational therapy, and a bladder implant. (R. at 38.) Records otherwise showed generally unremarkable clinical and mental status examination findings. (R. at 38.) Therefore, the ALJ found N.P. Armstrong's opinion not persuasive. (R. at 38.)

After completing the RFC assessment, the ALJ found at step four that Plaintiff was unable to perform her past relevant work. (R. at 39.) The ALJ then determined Plaintiff's vocational factors, including that she was a younger individual on the alleged disability onset date and had at least a high school education. (R. at 39.) At step five, the ALJ considered Plaintiff's vocational factors and RFC and found Plaintiff capable of performing sorter II, hand bander, and tag inserter, occupations which exist in significant numbers in the national economy. (R. at 39-40.) Therefore,

the ALJ found Plaintiff not disabled from July 31, 2021 through the date of the decision.  (R. at 40.)

## IV.   ANALYSIS

Plaintiff challenges the RFC, contending that the ALJ erred by (1) omitting limitations to address Plaintiff's off-task time and absenteeism; and (2) finding Dr. Scott's opinion unpersuasive. (ECF No 14, at 1, 16-22.)   The Court finds that the ALJ arrived at a reasonable RFC after conducting a thorough review of the record.  The ALJ explained the limitations she included in the RFC, thereby referencing substantial evidence supporting her conclusions.  (*See* R. at 25-39.)  In addition, the ALJ applied correct legal standards in analyzing Dr. Scott's opinion and again identified substantial evidence supporting her findings.  (*See* R. at 37-38.)  For these reasons and those that follow, the Court finds no reversible error and affirms the Commissioner's decision.

### A.  <u>The ALJ Properly Considered Plaintiff's Physical and Mental Limitations and Substantial Evidence Supports the ALJ's Findings</u>

Plaintiff argues that the RFC constitutes error because it does not account for all "substantiated" functional limitations. (ECF No. 14, at 18.)  Specifically, Plaintiff argues that the ALJ erred by not accounting for alleged time needed for additional breaks, being off-task, or being absent from work. (ECF No. 14, at 18.)  The Court finds that the ALJ reasonably accounted for Plaintiff's physical and mental limitations in the RFC and sufficiently explained how she made those determinations.

Based on the record, the ALJ limited Plaintiff to light work with postural and environmental limitations, a frequent handle, finger, and feel limitation, a sit/stand option every sixty minutes, work in moderate or quiet environment, and understanding, remembering, and carrying out simple tasks requiring no more than scheduled breaks and occasional changes in the work setting. (R. at 25.)  The ALJ supported the RFC determination by pointing to objective

medical evidence and treatment history, Plaintiff's statements about her activities, prior administrative medical findings and medical opinions, which did not support greater functional deficits. (*See* R. at 25-39.)  The ALJ explained that Plaintiff's physical impairments, including her spine disorder, MS, migraines and trigeminal neuralgia, cardiac dysrhythmias, diabetes, and urinary disorders limit her to light work with postural and environmental limitations, the need for a sit/stand option, and a moderate or quiet work environment. (R. at 30-32.)  Plaintiff's mental impairments warranted limiting Plaintiff to "understanding, remembering, and carrying out simple tasks requiring no more than scheduled breaks and occasional changes in the work setting." (R. at 35.)  This constitutes substantial evidence supporting the RFC determination.

Plaintiff contends that the RFC does not adequately account for her limited attention and concentration or her need to take unscheduled breaks, be off-task, or be absent from work. (*See* ECF No. 14, at 19-22.)  To support this argument, Plaintiff identifies symptoms, treatment, and portions of the record which she contends justify additional limitations. (ECF No. 14, at 19-22.) The ALJ, however, already considered this evidence in connection with the RFC determination but drew different conclusions than those desired by Plaintiff. (*See* R. at 25-39.)

Specifically, Plaintiff contends that she suffered from multiple MS exacerbations, requiring regular infusions or hospitalization. (ECF No. 14, at 19.)  She further argues that she experienced baseline "debilitating" MS symptoms, including constant pain, balance issues, fatigue, dizziness, weakness, hypersensitivity, insomnia, urinary frequency/retention, chest pain, tachycardia, and palpitations. (ECF No. 14, at 20; *see also* ECF No. 14, at 21.)  As for her mental impairments, Plaintiff asserts that she regularly reported severe anxiety, often accompanied by physical symptoms, like heart palpitations. (ECF No. 14, at 20.)  She argues that these symptoms would cause her to miss work, take unscheduled breaks, and otherwise be off-task. (ECF No. 14, at 20.)

The ALJ fully considered this evidence.    The ALJ acknowledged periods of MS exacerbations and hospitalizations prior to the alleged onset date but accurately identified only one instance since the alleged onset date where an MS exacerbation resulted in hospitalization.  (R. at 28-29.)  She acknowledged Plaintiff's reported symptoms but also noted that Plaintiff reported no side effects from her medication or MS treatment and that recent records showed her condition as "stable" with "unremarkable" findings.  (R. at 30.)  The ALJ noted Plaintiff "conservatively managed" her cardiac dysrhythmias with medication and that records generally documented normal heart sounds.  (R. at 31.)  Regarding her urinary disorders, the ALJ concluded that Plaintiff treated those symptoms with self-catheterization and then a bladder implant, which resolved the need for a catheter.  (R. at 32.)  Finally, the ALJ considered the "minimal and conservative" mental health treatment received by Plaintiff during the relevant period.  (R. at 35.)  Plaintiff received medication from a psychiatrist and participated in brief therapy.  (R. at 35.)  While Plaintiff reported some anxiety during her treatment, she generally had "unremarkable mental status exam findings" and reported improvement at other times.  (R. at 35.)  The ALJ found these records, as well as Plaintiff's activities of daily living, inconsistent with Plaintiff's subjective complaints.  (R. at 28, 35.)

In declining to adopt an RFC with greater restrictions, the ALJ cited to substantial evidence and drew an "accurate and logical bridge" between her discussion of the record evidence and the RFC determination.  *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (quoting *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000)).  While Plaintiff may take a different view of the evidence, the Court may not "reweigh conflicting evidence, make credibility determinations, or

substitute [its] judgment for that of the [ALJ]." *Johnson*, 434 F.3d at 653 (second alteration in

original) (quoting *Craig*, 76 F.3d at 589).[5]

**B.    The ALJ Applied Correct Legal Standards in Evaluating Dr. Scott's Medical Opinion and Substantial Evidence Supports the ALJ's Findings**

Plaintiff argues that the ALJ "improperly disregarded the opinion of Dr. Scott" in arriving

at the RFC.  (ECF No. 14, at 18.)  Contrary to Plaintiff's assertion, the ALJ adequately evaluated

Dr. Scott's opinion in accordance with applicable regulations and fully explained her reasoning

for finding such opinion not persuasive.  (*See* R. at 27-38.)  In doing so, the ALJ identified

substantial evidence supporting her decision.

*1. Applicable Regulations for Evaluating Medical Opinion Evidence*

Under applicable regulations,[6] the ALJ must consider and evaluate the persuasiveness of

all medical opinions or prior administrative medical findings from medical sources without

deferring or giving any specific evidentiary weight to any medical source.   20 C.F.R.

§§ 404.1520c(a), 416.920c(a).  Specifically, the ALJ must articulate the "persuasiveness" of all

medical opinions by considering five factors: (1) supportability; (2) consistency; (3) relationship

with the claimant; (4) specialization; and (5) "other factors that tend to support or contradict the

medical opinion[,]" including "familiarity with the other evidence" or "an understanding of [the

SSA] disability program's policies and evidentiary requirements."  *Id.* §§ 404.1520c, 416.920c.

---

[5]      Plaintiff also contends that the ALJ presented "legally insufficient hypotheticals to the vocational expert" based on missing RFC limitations. (ECF No. 14, at 17, 21.)  Because the Court finds no error in the RFC determination, it likewise finds no error in the hypotheticals presented to the vocational expert at steps four and five.  *See Mascio,* 780 F.3d at 637-38 ("[T]he ALJ may find that [certain limitations do] not affect [claimant]'s ability to work, in which case it would have been appropriate to exclude it from the hypothetical tendered to the vocational expert.").

[6] Claims involving medical opinion evidence filed on or after March 27, 2017 are evaluated using a revised regulatory framework.  20 C.F.R. §§ 404.1520c, 416.920c; (*see also* ECF No. 19, at 14.)

Supportability and consistency are the "most important" factors, and the ALJ must discuss how these factors were considered. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2). The regulations define supportability and consistency as follows:

> (1) *Supportability*. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

> (2) *Consistency*. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

*Id.* §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2). The ALJ may, but is not required to, explain how the other factors were considered. *Id.* §§ 404.1520c(b)(2), 416.920c(b)(2).

### 2. *Dr. Scott's Opinion and the ALJ's Assessment*

Dr. Scott noted that he treated Plaintiff for psychiatric disorders and symptoms since December 2019, including "severe panic disorder, with frequent, almost constant exacerbations and major depression." (R. at 37.) Dr. Scott assigned "extreme limitations" to Plaintiff's ability to complete a normal workday and workweek and "marked limitations" in her ability to maintain attention and concentration for any extended period of time, perform activities within a schedule and maintain regular attendance, work with or close to others, and perform at any consistent pace with normal breaks. (R. at 37, 817-18). Dr. Scott found Plaintiff moderately limited in her ability to carry out detailed instructions, sustain ordinary routines, interact appropriately with the public, get along with co-workers, respond appropriately to changes in the work setting, and travel in unfamiliar places. (R. at 37, 817-18.) Additionally, Dr. Scott found that due to Plaintiff's mental conditions, she would have four or more work absences per month. (R. at 37, 817.)

In considering Dr. Scott's opinion, the ALJ properly addressed the factors of supportability and consistency and ultimately found Dr. Scott's testimony unpersuasive. (R. at 37-38.) As for supportability, the ALJ found Dr. Scott's opinion not supported by any explanation or his own treatment notes. (R. at 37.) His records showed some reported symptoms but improvement with treatment and generally normal mental status examinations findings. (R. at 37-38.) For example, one treatment record from Dr. Scott noted that recent medication changes helped control anxiety symptoms, leaving Plaintiff feeling "really good." (R. 37-38, 996 (citing Ex. 12F/7 [R. at 996]).) The ALJ concluded that Dr. Scott's own treatment notes did not support the limitations in his opinion. (R. at 37-38.)

As for consistency, the ALJ found Dr. Scott's opinion inconsistent with the record as a whole. (R. at 37-38.) The ALJ pointed out that Plaintiff had no hospitalizations for mental health issues during the period at issue. (R. at 37.)[7] Plaintiff's therapist's notes demonstrated that Plaintiff had generally normal mental symptoms throughout examinations, outside of occasional moderate anxiety. (R. at 38 (citing Ex. 22F [R. at 3878, 3881, 3883, 3885, 3887, 3889, 3891]).) Additionally, neuropsychological exam notes found only "minimal to moderate" issues, describing Plaintiff as having normal appearance, mood, affect, comprehension, thought process, expressive

---

[7]    Plaintiff contends that the ALJ erred by considering Plaintiff hospitalization for MS in April 2022 separate from treatment for mental health conditions. (ECF No. 14, at 18.) She also argues that she "went to the hospital or emergency room on multiple occasions for multiple reasons, including multiple sclerosis, anxiety/panic attacks, and related symptoms." (ECF No. 14, at 18.) These arguments fail for many reasons. First, the ALJ acknowledged Plaintiff's hospitalization in April 2022 but correctly noted it was due to an MS exacerbation. (R. at 29.) Second, as Plaintiff concedes, the hospitalization for anxiety-related issues and many of the emergency room visits she references occurred prior to the alleged disability onset date. (ECF No. 14, at 18-19.) Therefore, the ALJ accurately concluded that no mental health issues resulted in hospitalization during the period at issue. Third, the ALJ identified other substantial evidence inconsistent with Dr. Scott's opinion. (*See* R. at 38.)

and receptive language, insight, and judgment. (R. at 38, 520-21.)[8]  Therefore, the ALJ found Dr.

Scott's opinion inconsistent with the medical record as a whole.[9]

Plaintiff's own reported daily activities provide further support for the ALJ's skepticism of

Dr. Scott's opinion. (*See* R. at 35.)  Plaintiff reported acting as the primary caregiver to her young

---

[8]     Plaintiff also argues that "the ALJ understate[d] the findings from the neuropsychological evaluation" and failed to acknowledge a statement that Plaintiff's anxiety would likely impact her ability to focus and to attend work. (ECF No. 14, at 19.)  The ALJ acknowledged that Plaintiff's "neuropsychological exam revealed minimal to moderate findings." (R. at 38.)  The record showed Plaintiff had a "predominately normal range Neuropsychological Evaluation with respect to neurocognitive functioning" and that "[t]he only impairments noted were for auditory attention (mild) and her nondominant handed motor skills." (R. at 525; *see also* R. at 38 (citing Ex. 3F/10, 11 [R. at 525-26]).)  Otherwise, Plaintiff's performance "across all other neurocognitive domains" was normal or above normal and any "attention issue" was "quite mild." (R. at 525-26; *see also* R. at 38 (citing Ex. 3F/10, 11 [R. at 525-26]).)

Thus, the ALJ considered the neuropsychological evaluation and reasonably found in light of Plaintiff's subjective complaints, activities of daily living, medical record, and opinion evidence that Plaintiff could understand, remember and carry out "simple tasks requiring no more than scheduled breaks and occasional changes in the work setting." (*See* R. at 35, 38.)  To the extent Plaintiff contends that the ALJ should have drawn different conclusions from the neuropsychological evaluation, this again amounts to an improper request for the Court to reweigh evidence, which the Court cannot do in a social security appeal. *See Johnson*, 434 F.3d at 653.

[9]     Plaintiff challenges the consistency analysis by arguing that "the ALJ overlooks the fact that NP Bishop concluded Jones had limitations from multiple sclerosis like those given by Dr. Scott." (ECF No. 14, at 19.)  She does not further explain this contention.  Plaintiff's failure to develop this argument waives any ability to pursue it. *See Jonathan M. H. v. Kijakazi*, No. 3:21-cv-600, 2022 WL 3643385, at *7 n.6 (E.D. Va. Aug. 8, 2022) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (alteration in original) (quoting *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990))), *report and recommendation adopted*, 2022 WL 3635441 (E.D. Va. Aug. 23, 2022).  This argument fails in any event.

The ALJ reviewed and considered N.P. Bishop's opinion letter, which stated that Plaintiff's MS had been extremely "difficult to manage," required multiple hospital visits to address symptoms, and caused "baseline neuropathic pain, fatigue, immune dysfunction, frequent falls, balance issues, insomnia, anxiety, and depression." (R. at 38.)  The ALJ found N.P. Bishop's opinion not consistent with the medical record. (*See* R. at 38.)  The ALJ noted only one MS-related hospitalization in April 2022. (R. at 38.)  Records otherwise showed that Plaintiff generally responded well to treatment through medication and physical and occupational therapy, and that clinical findings were unremarkable and imaging studies of the brain and spine showed stabilization of MS. (R. at 38.)  Therefore, the ALJ properly considered N.P. Bishop's opinion letter, but found it unpersuasive.

20

daughter and that she could perform household chores, complete personal grooming tasks with some assistance from family, prepare meals, go out daily, watch movies, read, shop, and handle finances. (R. at 35, 306-09, 324-27.) Additionally, from April to May 2023, Plaintiff worked as a patient care assistant for a home health service where she drove to the homes of patients and assisted with "total care," including tasks such as meal preparation, dressing, cleaning, and showering. (*See* R. 56-59.)

Thus, the ALJ applied correct legal standards in evaluating the opinion of Dr. Scott and referenced substantial evidence supporting the finding that Dr. Scott's restrictive opinion was unpersuasive. When read as a whole, the ALJ's decision provides an "accurate and logical bridge" from the record evidence to her conclusions concerning the unpersuasiveness of Dr. Scott's opinion. *See Monroe*, 826 F.3d at 189 (quoting *Clifford*, 227 F.3d at 872). Therefore, the Court finds no error.

## V.    CONCLUSION

For the reasons set forth above, the Court will DENY Plaintiff's Motion for Summary Judgment or, in the Alternative, Motion for Remand (ECF No. 13), GRANT the Commissioner's Motion for Summary Judgment and Brief in Support Thereof (ECF No. 19), and AFFIRM the final decision of the Commissioner. An appropriate Order will accompany this Memorandum Opinion.

/s/

Summer L. Speight
United States Magistrate Judge

Richmond, Virginia
Date: March 31, 2026